## Souder *versus* Schechterly.

1. The general rule is that a debtor may appropriate his payments as he sees fit at the time of making them; but if neither he nor his creditor makes any specific application of them the law will do so. In the case of running accounts, composed of various items of debit and credit occurring at different times, and no special appropriation of the payments is made by either party, the law will apply the successive payments or credits to the discharge of the debit items antecedently due in the order of time in which they stand in the account; in other words, each item of payment or credit is applied in extinguishment of the earliest debit items in the account, until the whole payment or credit is exhausted.

2. The general rule is that the declarations of a grantor, made after he has parted with his title, are not admissible for the purpose of impeaching it; but the rule has been so modified that when the bona fides of the transaction is assailed by creditors on the ground of fraud, and some testimony is introduced tending to show collusion, then such subsequent declarations of the grantor are admissible.

June 13th 1879.   Before SHARSWOOD, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   MERCUR and WOODWARD, JJ., absent.

Error to the Court of Common Pleas of *Columbia county :* Of May Term 1879, No. 65.

Ejectment by William Schechterly against Elizabeth W. Souder, for a lot of land.   Both parties claimed through William F. Souder.   The plaintiff alleged he acquired title by virtue of a judgment against the latter, and a sheriff's sale and deed to him.   The defendant alleged that her husband, William F. Souder, conveyed the property to her before the entry of the judgment, under which plaintiff claimed.   To maintain the issue, plaintiff exhibited a judgment against William F. Souder, in favor of Daniel Snyder, entered on the 9th of December 1873, against the administrators of said William F. Souder, who died in April 1872.   This judgment was for $257.18, and was assigned to plaintiff.   An execution issued thereon, and the property was sold to plaintiff for $800, and a sheriff's deed was delivered to him in May 1874.   The defendant was in possession of the property.   On the 30th of April 1866, William F. Souder, by a deed which expressed a

[Souder *v.* Schechterly.]

consideration of $1500, conveyed the lot in question to his wife directly, without the intervention of a trustee.    There was some evidence that in 1842, at the time of her marriage, Mrs. Souder brought some money to her husband, and that a portion thereof was invested in household goods.    The undisputed facts were, that William F. Souder purchased the lot, erected a house thereon, and lived·there with his wife until his death; that the lot was worth about $1500; that he owned another lot worth about $300, and household furniture valued at $600 ; that he was an industrious mechanic and earned about $1200 per year.    It was alleged that there were various claims against Souder at the time he made the conveyance to his wife.    One of these claims was that of a Mr. Reighart, who testified, that in 1866 there was a balance in money due him· by Mr. Souder, of $277 ; in April, about the time of the conveyance to his wife, of about $270 ; that there was a running account between them, until 1869, when witness took a note ; that subsequently to the death of Mr. Souder suit was brought upon the note and judgment obtained thereon for $605 ; that the balance in 1869, when the note was taken, was $458.

At the trial, before Elwell, P. J., the plaintiff offered to prove : that about the time of the conveyance to the wife, Souder was contemplating entering into the lumber business with partners, and following the evidence already given of the business transactions of William F. Souder, that in 1868, in the spring, Souder entered into partnership with the witness, Daniel Snyder, and Eli Hartman, as the firm of Snyder, Hartman & Co., in the planing-mill business ; to prove the financial condition of Mr. Souder in 1866 and down to the death of Souder, and also the financial condition of this firm ; that during all the transactions of the witness with Souder, he represented that he owned the property in question in this action, to about November 1871 or the time of the recording of the deed to Mrs. Souder by her husband ; and also declarations of Souder that he made the deed in view of entering into partnership in the lumber business.

The defendant objected, but the court overruled the objection.

The court also admitted evidence of the declarations of William F. Souder, made in 1871, to witness, as to the transfer of this property to his wife.    Also, evidence to prove indebtedness contracted by Souder from 1868, and down to the recording of the deed by the wife, for the purpose of showing bad faith in making the conveyance against creditors.

Two of defendant's points, with the answers thereto, were as follows :

5. That the declarations of William F. Souder, made some years after his conveyance to his wife, are not evidence to affect her title, unless made in her presence, or by her authority.

Ans. " I do not affirm this point.    The conveyance was volun-

[Souder *v.* Schechterly.]

tary. If there were creditors to be defrauded, the fraud was continuous, and the declarations of either party to the conspiracy to defraud are evidence, made at any time.''

7. That as to the claim of B. F. Reighart of $277 in 1866, the subsequent payments made by Souder of $400 to $500 upon account, in the absence of any specific appropriation of payments by the parties, will, in law, be applicable to the earlier items of the account, including those prior to April 1866, and the claim takes position as a debt subsequent to the conveyance to which the doctrine of legal or constructive fraud, in the absence of actual, will not apply.

Ans. "I have answered that in the general charge refusing so to instruct you. I say the book-account was but one debt. The law in the absence of any agreement of the parties would apply the payment on the whole debt; at the most, therefore, payments made after 1866 can only be considered as applicable ratably on the whole debt, the old as well as the new; consequently, there would be a portion of that debt, at least, due in 1866. The purpose of giving in evidence the debts of 1866, is to bear upon the question of the intent with which the conveyance was made by Mr. Souder to his wife, and of course received by her; for if he was guilty of fraud, she was equally guilty of fraud, because she paid no money for the property; and his intent, therefore, is attributable to her in the whole course of the transaction."

The verdict was for plaintiff, when defendant took this writ and assigned for error the admission of the above testimony, and the answers to the foregoing points.

*A. C. Smith, C. R. Buckalew* and *H. E. Smith,* for plaintiff in error.—The Reighart claim took position as a debt subsequent to the conveyance, and could not raise or support the imputation of legal fraud against it. In the case of running accounts, each item of payment or credit is applied in extinguishment of the earliest items of debt standing in the account until the whole payment is exhausted. The court erred in admitting declarations of Souder, made years after the conveyance; Bump on Frauds, 2d ed., 567; Hartman *v.* Diller, 12 P. F. Smith 43; Tripner *v.* Abrahams, 11 Wright 227; Williams *v.* Davis, 19 P. F. Smith 21.

*Charles G. Barkley* and *Samuel Knorr,* for the defendant in error.—The least degree of concert or collusion between parties to an illegal transaction, makes the act of one the act of all, and the declarations of one may be given in evidence to affect the others: Peterson *v.* Speer, 5 Casey 491. A book-account is held to be but a single debt, not made up of several separate and distinct debts: Hollister *v.* Davis, 4 P. F. Smith 508.

Mr. Justice STERRETT delivered the opinion of the court, October 6th 1879.

The controversy in this case hinged on the validity of the voluntary conveyance of April 30th 1866, executed by William F. Souder, in favor of his wife, the plaintiff in error. The deed was assailed on the ground of actual as well as constructive fraud; and there was a verdict in favor of the plaintiff below, who claimed as purchaser at sheriff's sale under a judgment obtained in December 1873 against the administrators of Souder with notice to his widow and heirs. It may be conceded that if the deed from Souder to his wife was fraudulent, as alleged, the plaintiff below was entitled to recover.

Testimony was introduced for the purpose of proving that Souder was indebted to several persons at the date of the conveyance. It was shown that on an open account, he then owed B. F. Reighart a balance of $277; that the account ran on several years thereafter, during which there were credits and payments on account made by Souder without any specific application thereof by either party, amounting to between four and five hundred dollars. It was claimed by the plaintiff in error that in the absence of any specific appropriation of payments by the parties, the law would apply them in their order to the oldest items of the account, including those prior to April 30th 1866; that in this way the indebtedness existing at the date of the conveyance was fully extinguished, and the claim, consisting of the later items, would rank as a debt contracted subsequent to the conveyance, to which the doctrine of legal or constructive fraud, in the absence of actual fraud, would not apply. A point to this effect was submitted to the court, and in refusing the same the learned judge said: " The book-account was but one debt. The law, in the absence of any agreement of the parties, would apply the payment to the whole debt. At most, therefore, payments made after 1866, can only be considered as applicable ratably on the whole debt, the old as well as the new, consequently there would be a portion of that debt at least due in 1866. The purpose of giving in evidence the debts of 1866 is to bear upon the question of the intent with which the conveyance was made by Mr. Souder to his wife, and of course received by her; for if he was guilty of fraud, she was equally guilty, because she paid no money for the property, and his intent, therefore, is attributable to her in the whole course of the transaction." This answer has been assigned for error.

The general rule is that a debtor may appropriate his payments as he sees fit at the time of making them; but if neither he nor his creditor makes any specific application of them the law will do so. In the case of running accounts, composed of various items of debit and credit occurring at different times, and no special appropriation of the payments is made by either party, the law will

[Souder v. Schechterly.]

apply the successive payments or credits to the discharge of the debit items antecedently due in the order of time in which they stand in the account; in other words, each item of payment or credit is applied in extinguishment of the earliest debit items in the account, until the whole payment or credit is exhausted: 1 Story's Eq. Jur. 459, a ; Pierce v. Sweet, 9 Casey 151; Hollister v. Davis, 4 P. F. Smith 508. There are some exceptions to this rule, but there is nothing in the circumstances of the present case to bring it within any of them. In answer to defendant's first point the learned judge had already instructed the jury, that as to any debt due by Souder at the time of the conveyance to his wife, its payment by him afterwards and before her title was controverted, will relieve the case from any imputation of fraud as to such debt. The balance due Reighart was the only debt, existing at the date of the conveyance, that was not disputed, and as the jury were practically instructed that it was not fully discharged by the subsequent payments, the error was likely to be prejudicial to the defendant below and may have carried the verdict against her.

The remaining assignments of error, relating to the admission of testimony as to acts and declarations of Souder subsequently to the conveyance to his wife, are not sustained.

The general rule, applicable more particularly to conveyances for a valuable consideration, undoubtedly is, that the declarations of the grantor, made after he has parted with his title, are not admissible for the purpose of impeaching it; but the rule has been so modified that when the bona fides of the transaction is assailed by creditors on the ground of fraud, and some testimony is introduced tending to show collusion, then such subsequent declarations of the grantor are admissible: Hartman v. Diller, 12 P. F. Smith 37. The same principle is recognised in Scott v. Heilager et al., 2 Harris 238; McElfatrick v. Hicks, 9 Id. 402; Confer v. McNeal, 24 P. F. Smith 112, and Tripner v. Abrahams, 11 Wright 220. It is said in Rodgers v. Hall, 4 Watts 359, that the least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of all. While the evidence of collusion in this case was very slight, there were some facts and circumstances connected with the transaction that were proper for the consideration of the jury, and justified the court in receiving the testimony, and submitting it to the jury, as was done, with carefully guarded instructions.

Judgment reversed and a *venire facias de novo* awarded.